429 So.2d 875 (1983)
Elizabeth FABIO
v.
NEW ORLEANS PUBLIC SERVICE, INC.
No. CA 0328.
Court of Appeal of Louisiana, Fourth Circuit.
March 24, 1983.
*876 C. David Schumacher, Carl J. Schumacher, Jr., New Orleans, for plaintiff-appellee.
Floyd F. Greene, New Orleans, for defendant-appellant.
Before WARD, AUGUSTINE and WILLIAMS, JJ.
WARD, Judge.
Mrs. Fabio was injured on March 2, 1981, while riding as a fare-paying passenger on a New Orleans Public Service [NOPSI] bus. The Trial Judge, on May 11, 1982, rendered judgment against NOPSI and awarded Mrs. Fabio $52,806.73 in damages. NOPSI does not contest the amount of damages, but it has appealed the Trial Judge's finding that its driver was negligent. NOPSI argues that a sudden emergency was created by the driver of another vehicle and that NOPSI's driver was without fault.
Mrs. Fabio argues that the judgment should be affirmed because the NOPSI driver contributed to the sudden emergency and that NOPSI did not prove that its driver met the standard of care required of a public carrier.
We affirm the judgment of the lower court.
During trial, the evidence showed that this incident occurred on Read Road in New Orleans East. Mrs. Fabio testified that as the bus was travelling toward Lake Pontchartrain on Read Road, she rose from her seat, preparing to get off the bus at the Lake Forest Shopping Plaza. She sat back down when the bus stopped for a red light at the intersection of Lake Forest Boulevard and Read Road, but when the light changed and the bus started moving again she again rose from her seat and was moving toward the front of the bus when the bus came to a sudden stop, and she was thrown to the floor. Another passenger who was standing in back of her fell on top of Mrs. Fabio.
The bus driver testified that while she was driving in the right lane, an automobile pulled suddenly from the left lane and crossed into the right lane where the bus was travelling to turn into the parking lot of a Wendy's Restaurant. To avoid striking that vehicle, the bus driver was forced to apply her brakes hard. She testified that she was driving between 15 and 20 m.p.h. and that to stop, she "fanned the brakes." She also testified that she thought the speed limit on Read Road was 30 m.p.h., but she was unsure, because the day of the accident was only her second time to drive the Read Road route.
Other witnesses who were also passengers estimated that she was driving between 30-45 m.p.h., and they testified that the stop was a hard jerk. One witness stated that the driver was going "pretty fast", a little faster than buses usually go on that route, and that if the bus driver had *877 not put on the brakes the way that she did, she would have hit the automobile because of her speed. [Tr. 98]
NOPSI claims that the unexpected maneuver of the driver of the other vehicle created a sudden emergency and forced the bus driver to come to a sudden, hard stop, causing passengers to be thrown around inside the bus. NOPSI claims that the presence of such an emergency exculpates the bus driver from negligence.
In Dick v. Phillips, 253 La. 366, 218 So.2d 299 (La.1969), the Supreme Court held:
Although [defendant] invokes the doctrine of sudden emergency to exculpate himself from a charge of negligence, the doctrine is not available to him. The rule of sudden emergency cannot be invoked by one who has brought that emergency on himself by his own wrong or who has not used due care to avoid it. The sudden emergency doctrine is applicable to the standard of conduct of a motorist after an emergency has arisen, it does not apply to lower the standard of care required of motorists before the emergency occurs. (Citations omitted)
The Trial Court found that the bus driver had been negligent before an emergency arose because of the apparent speed at which she was travelling and, therefore, she had contributed to whatever sudden emergency existed. The record does not show that his factual findings were manifestly erroneous. Rather, the record shows that the bus driver's conduct falls far short of the standards of care required of a common carrier.
In Wise v. Prescott, 244 La. 157, 151 So.2d 356 (La.1963) the Supreme Court spelled out the standard of care required of a public carrier and explained what that carrier must show in order to rebut a prima facie case of negligence when a passenger has been injured.
The mere showing of injury to a farepaying passenger on a public conveyance and his failure to reach his destination safely establishes a prima facie case of negligence and imposes the burden on the carrier of convincingly overcoming such case.
* * * * * *
A public carrier of passengers while not an insurer is required to exercise the highest degree of viligance, care and precaution for the safety of those it undertakes to transport and is liable for the slightest negligence.
* * * * * *
The carrier must do all that human sagacity and foresight can do under the circumstances, in view of the character and mode of conveyance adopted, to prevent injury to passengers, the carrier being held liable for the slightest negligence with reference to the exercise of such care. (Citations omitted)
We affirm. All costs of trial and this appeal are to be paid by NOPSI.