594 So.2d 1111 (1992)
Anne Andrake URETA, Widow of Segismundo Z. URETA, Individually and on Behalf of her Minor Children, Sean Ureta and Steven Ureta
v.
LOUISIANA DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, the Mississippi River Bridge Authority, Modjeski and Masters, and deLaureal Engineers, Inc.
No. 90-CA-0520.
Court of Appeal of Louisiana, Fourth Circuit.
February 13, 1992.
T. Peter Breslin, Chehardy, Sherman, Ellis & Breslin, Metairie, for plaintiff/appellant.
Linda S.A. Burke, Sessions & Fishman, New Orleans, for defendant/appellee deLaureal Engineers, Inc.
Thomas J. Wyllie, A. Kirk Gasperecz, Adams & Reese, New Orleans, for defendant-appellee, Northbrook Ins. Co.
Charles A. Mouton, Andrew H. Meyers, Laura K. Austin, Preis & Draft, Lafayette, for defendant-appellee, Intern. Ins. Co.
Before BYRNES, WARD and ARMSTRONG, JJ.
BYRNES, Judge.
In this wrongful death and survivors' action, plaintiff, Anne Andrake Ureta, individually and on behalf of her minor children Sean Ureta and Steven Ureta, appeals the dismissal of her suit for damages against deLaureal Engineers, Inc. ("deLaureal") and its insurers, Northbrook Insurance Company ("Northbrook") and International Insurance Company ("International"), *1112 on a motion for summary judgment. We affirm.
The undisputed issues of fact are as follows: Anne Andrake Ureta was a passenger in the vehicle in which her husband Dr. Segismundo Z. Ureta was killed in a "cross-over" accident which occurred on the Greater New Orleans Mississippi Bridge on July 13, 1986, when a vehicle traveling in the opposite direction crossed the center "emergency lane" and struck decedent's vehicle head-on.
The engineering firm of Modjeski & Masters ("M & M") originally designed the Greater New Orleans Mississippi River Bridge in the early 1950's. From 1958, when the bridge first opened, until 1964, M & M was engaged as the regular consulting engineers for the Mississippi River Bridge Authority ("MRBA"). That arrangement was terminated in 1964.
In December 1972, the MBRA entered into a retainer contract with a joint venture between M & M and deLaureal as consulting engineers. Services which were not covered by the retainer included consulting services for special detailed studies and specific improvement projects for the bridge.
In 1973, the MRBA authorized the joint venture to conduct a traffic study to determine what could be done to curtail accidents on the bridge. In February 1974 the joint venture presented a report to the MRBA in which it recommended several measures including (1) strict enforcement of the speed limit; (2) reduction of the speed limit during hazardous driving conditions via flashing lighted messages; and (3) placement of a skid resistant asphalt surface over the roadway deck. The joint venture recommended against the installation of a median barrier, primarily because of the adverse effect it would have had on the capacity and operation of the bridge. It recommended that a median barrier be considered as a "Phase II" implementation, deferred until at least one more fiscal year's statistics could be collected and analyzed.
In 1975 the joint venture submitted additional reports recommending against installation of a median barrier. In an October 1977 report, the joint venture again recommended against the placement of a median barrier because of the severe capacity reduction and "virtually insurmountable operational problems" it would cause. On February 1, 1978, the MRBA terminated its contract with the joint venture. A new contract was entered into between M & M, alone, and the MRBA, effective February 1, 1978. In a letter dated January 20, 1983, the Senior Vice President of Kidde Consultants, Inc., formerly deLaureal Engineers, Inc., informed the MRBA that because deLaureal had no responsibility or involvement with the MRBA since its contract was terminated in 1978, and it had no current information regarding those factors upon which it based its earlier studies and recommendations, the MRBA should not rely on those earlier studies.
Subsequent to the accident, plaintiff instituted this action against the Louisiana Department of Transportation and Development ("DOTD") the MRBA, M & M, its insurer, and deLaureal as well as its insurers, Northbrook and International, for their failure to recommend and/or install a median barrier on the bridge. On December 19, 1989, the trial court granted the joint summary judgment filed by deLaureal, Northbrook and International based on the finding that deLaureal's involvement was too remote to have been a cause of the accident, noting that deLaureal had given notice to MRBA not to rely on advice previously given by deLaureal. Plaintiff appeals that summary judgment.
On appeal Ms. Ureta contends that material issues of fact exist in determining the duty owed by deLaureal to plaintiff and that a factual dispute remains as to whether MRBA relied on the professional engineering advice rendered by deLaureal. Plaintiff asserts that deLaureal is liable to plaintiff by virtue of its continuing duty to warn MRBA and the general public of any conditions which dictated departure from its prior recommendations. deLaureal and its insurers argue that they owed no legal duty to plaintiff or if any legal duty existed, that duty terminated by virtue of deLaureal's *1113 dismissal as a consulting engineer in January 1978; and that deLaureal's failure to recommend a median barrier for the bridge as a matter of law is not a proximate cause of plaintiff's injuries.
Summary judgment is proper only if the pleadings, depositions and affidavits show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La.C.C.P. art. 966(B); Charles v. Faust, 487 So.2d 612 (La.App. 4th Cir.1986). In a tort claim under a duty risk analysis the initial requirement that the plaintiff must prove is that the risks and harm encountered fall within the protection of the legal duty owed by the defendant. Cornelius v. Housing Authority of New Orleans, 539 So.2d 1250 (La.App. 4th Cir.1989), writ denied 544 So.2d 404 (La.1989). Whether a particular risk of harm is included within the scope of a particular duty is a legal issue. Dillon v. Louisiana Power and Light, 557 So.2d 293 (La.App. 4th Cir.1990). Whether a legal duty exists is a question of law. Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364 (La.1984); Fields v. Gulf Oil Co., 517 So.2d 1190 (La.App. 4th Cir.1987), writ denied 519 So.2d 144 (La. 1988); Coates v. Nettles, 563 So.2d 1257 (La.App. 1st Cir.1990).
After the trial court granted the summary judgment at issue in the present appeal, the Louisiana Fourth Circuit Court of Appeal rendered its decision, Carter v. Deitz, 556 So.2d 842 (La.App. 4th Cir.1990), writ denied 566 So.2d 960, 992, 993 (La. 1990), which involved another cross-over accident on the bridge on August 13, 1977, and the same allegations of negligence concerning the failure to install a median barrier. This Court stated:
The absence of a median barrier on the GNOB [Greater New Orleans Bridge] did not cause the bridge to be unreasonably dangerous. Consequently, the joint venture had no duty to recommend installation of a median barrier. Moreover, by implementing the intermediary safety measures which were recommended by the joint venture, such as resurfacing the GNOB roadway, installing impact attenuators, replacing out-dated lighting, installing surveillance televisions and variable message signs, providing strict enforcement of speed limits and lowering the speed limits and by instituting a public awareness program about the need for GNOB users to maintain control over their vehicles, the MRBA upgraded the overall safety of the GNOB maintaining the GNOB in a reasonably safe condition for reasonably prudent drivers. [Emphasis added.] 556 So.2d at 844. [See also Utley v. State, 570 So.2d 501 (La.App. 5th Cir.1990), writ denied 573 So.2d 1121, 1122 (La.1991).]
Plaintiff argues that the issue of whether a legal duty exists should be determined by a full trial on the merits where the trial court should instruct the jury of the duties owed. However, summary judgment is proper where no duty exists as a legal question of law where no factual dispute exists and no credibility question is required. Coates, supra. Se also Cornelius, supra, Fields, supra; Spurlock v. Schwegmann Bros. Giant Supermarket, 475 So.2d 20 (La.App. 4th Cir.1985); Hammer v. City of Lafayette, 502 So.2d 301 (La.App. 3rd Cir.1987).
Plaintiff contends that a factual dispute exists as to whether and to what degree the MRBA relied on the professional advice rendered by deLaureal. Even assuming that the MRBA relied on deLaureal's recommendations, that fact will not support a duty to protect against the harm incurred. Because the joint venture owed no duty to recommend installation of a median barrier, deLaureal had no continuing duty to warn of conditions which dictated departure from its prior recommendations. As stated in Carter, supra, 556 So.2d at 844, the absence of the median barrier did not cause the bridge to be unreasonably dangerous.
Based on the record, we conclude that the only issue before us is whether deLaureal owed a duty to the plaintiff. Finding no issue as to material fact, we hold that deLaureal owed no duty to recommend installation of a median barrier as a matter of law. Accordingly, we affirm the summary *1114 judgment dismissing plaintiff's action against the appellees.
AFFIRMED.